(No.98-CV-1028-

*In re* APPLICATION OF DONNA L. BALSAVICH

*Opinion filed September 25, 2000.*

BRIAN MCMANUS, JR., for Claimant.

JAMES R. RYAN, Attorney General (KIMBERLY M. PATE, Assistant Attorney General, of counsel), for Respondent.

## OPINION

EPSTEIN, J.

This cause is before the Court of Claims on a recommendation from a Commissioner of this Court following a hearing. This Court denied Claimant's application for benefits under the Crime Victims Compensation Act (740 ILCS 45/1 *et seq.*), on September 28, 1998, on the basis that the victim's injuries were substantially attributable to, or provoked by, the victim's own wrongful actions as proscribed by section 6.1(d) of the Act.

Claimant filed a timely request for a hearing. A hearing was held before Blanche Hill Fawell, a Commissioner of this Court on January 11, 2000.

The facts in this case are not in dispute. On April 25, 1997, the victim, Brian Balsavich, was traveling westbound on Route 30 in Frankfort, Illinois. Route 30 is a two-lane paved roadway at that point. The offender pulled out of a parking lot making a right-hand turn. He swung wide and crossed over the double yellow line striking the victim's pick-up truck on the driver's side rear area. There was minimal damage to the victim's vehicle and the offender's vehicle lost the lens surrounding the left front headlight.

After striking the victim's truck the offender fled the scene and was followed by a witness to the accident. The offender was eventually stopped. The offender's blood alcohol level was .10.

After being hit, the victim made a U turn and proceeded eastbound on Route 30. Approximately 200 yards from where the accident occurred, the victim was found

slumped over the steering wheel. Attempts to resuscitate him were unsuccessful and he was later pronounced dead. There was an open can of beer and several other cans of beer found in the victim's truck. Also found in the victim's truck in the driver's side door was a Taser stun gun. The first blood alcohol test showed the victim's blood alcohol level to be 116 mgm. A test take some 14 hours later showed the level to be 30 mgm. The Claimant introduced a letter from a physician stating that neither result should be relied upon due to the disparity in the results.

The offender pled guilty to aggravated driving under the influence. The charge of reckless homicide was *nolle prossed* as part of the plea agreement.

The Cook County Medical Examiner stated that the cause of death was a subarachnoid hemorrhage due to arteriovenous malformation. In layman's terms the victim suffered a broken blood vessel in his brain. This broken blood vessel was caused by a pre-existing condition of which the victim was unaware.

The Medical Examiner's report states that "a factor significantly contributing to his death is stress due to the automobile accident." The attorney, who represented the offender in the criminal case, told the Will County Court on April 1, 1998, that it was the opinion of a Dr. Berstrand that, while he could not rule out the accident as a source of stress that caused the victim's injury, "these injuries can occur spontaneously."

After the hearing, the Court left the record open to allow the parties to submit additional evidence. The office of the Attorney General submitted a copy of the victim's driving abstract, showing that in 1989 the victim was arrested for driving while under the influence of alcohol. The victim was placed on court supervision. The Claimant objected to the introduction of the abstract.

There were two issues which were litigated at the hearing. The first was whether there was any misconduct on the part of the victim which contributed to his injuries. The specific question was whether or not the victim's intoxication contributed to his death.

The Court finds no evidence that the victim's intoxication contributed to the occurrence of the accident. Specifically there was evidence presented that there was absolutely no way for the victim to have avoided being hit by the offender's car. Secondly, there was no evidence presented that the victim's intoxication in any way caused the subarachnoid hemorrhage.

The second issue presented was whether or not the victim's injuries were caused by a violent crime. There is no issue as to whether or not a violent crime occurred. The offender pled guilty to aggravated driving under the influence, a violent crime as defined by the Act.

The Claimant has the burden of proving that the cause of death was the proximate result of a violent crime. *In re Application of Mary Joanne Urban* (1993), 46 Ill. Ct. Cl. 591.

It is the position of the Claimant that the stress of the accident caused the victim to suffer the subarachnoid hemorrhage. In other words, but for the violent crime the subarachnoid hemorrhage would not have been triggered.

The position of the office of the Attorney General is that the victim's death was the result of a pre-existing medical condition which could have been set off by any one of the numerous stress factors which were present.

The State argued that several circumstances existed which could have triggered the victim's subarachnoid hemorrhage. First was the fact that the victim was driving while under the influence of alcohol with a fair amount of open

liquor in the cab of his pick-up truck. Second, the State argued that the victim suffered from an advanced condition of glaucoma and that this was an additional stress factor.

Third, the State argued that the accident itself could not have induced enough stress to trigger the victim's pre-existing condition. The offender, who testified at the hearing, stated that he "barely tapped" the pick-up truck. The photographs which were introduced into evidence show minimal damage to the victim's vehicle. The victim suffered no physical trauma as a result of the accident and the truck was clearly driveable.

The issue to be decided by the Court is whether or not the victim's death was the result of the commission of a violent crime. The accident was the result of the violent crime of driving under the influence of alcohol. The next issue is whether or not the victim's death was the result of the accident.

The accident alone clearly did not cause the victim's death. There was only slight damage to the victim's pick-up truck and the victim suffered no physical injuries from the accident.

The causes of death listed on the death certificate are subarachnoid hemorrhage due to arteriovenous malformation with "stress automobile accident" listed as a condition contributing to but not resulting in the underlying cause listed above. The death certificate states that the victim died from a damaged blood vessel in his brain that leaked causing his death. This blood vessel bled as a result of a congenital defect. Stress is listed as a factor which contributed to the blood vessel bleeding at that particular time. Stress is not listed as the cause of death but rather a condition contributing to the cause of death.

The report of postmortem examination by the Cook County Medical Examiner's Office states that "a factor

significantly contributing to his death is stress due to an automobile accident." The Court understands this report to say that the victim died as a result of a subarachnoid hemorrhage which occurred as the result of a congenital malformation of the blood vessels in the brain. The blood vessels ruptured at that particular moment due to stress.

The Court does not believe that the medical examiner can state with exact certainty what the stress was which caused the bleeding to begin. The Claimant argues that the stress was due solely to the accident. The State argues that the victim's stress was the result of driving while under the influence of alcohol and the fear of being caught and arrested.

The Court notes that, in addition to the offense of DUI, the victim was committing the offense of unlawful use of a weapon by keeping the Taser stun gum in the drivers side door of his pick-up truck. Additionally, if the victim was arrested for DUI he would be ineligible for court supervision as he had received supervision for DUI within the past 10 years. The victim was also committing the offense of transportation of open liquor in a motor vehicle.

The Court finds that a violent crime has occurred. The Court finds that any award to the Claimant shall be reduced by 50% based on the extent that the victim's acts of driving under the influence of alcohol and committing the offense of unlawful use of weapon and transportation of open liquor caused the stress which contributed to his death.

The Claimant's attorney, Brian McManus, Jr. filed a petition for attorney's fees, requesting that he receive 25% of whatever the Claimant recovered in this matter. Mr. McManus stated that he already has a contingency fee arrangement with the victim's estate which entitles him to receive one-third of any award the Claimant receives.

The Commissioner issued an order stating that the Act does not permit the awarding of contingent fees. The Act states that attorney's fees shall only be awarded in such amounts as the Court deems reasonable. The Court must examine the amount of time spent and the experience of the attorney in order to determine what constitutes a reasonable award of attorney's fees.

An award made under the Crime Victims Compensation Act differs significantly from a recovery in a personal injury case. Under the Act, an award can only be made for actual expenses or for actual monies lost. There are no awards for pain and suffering nor for attorney's fees. Every dollar granted as an award for attorney's fees under the Act must come from either monies awarded for medical and funeral expenses or from lost earnings.

Mr. McManus then submitted an amended petition for attorney's fees which stated that he performed 20 hours of work and bills at an hourly rate of $200. He requested a total of $4,000. There was no itemization of what work was done during these 20 hours.

Mr. McManus then submitted a first amended petition for attorney's fees. Attached to this was an itemization of the 20 hours of work. The Court has grave doubts as to the accuracy of this bill. For example, Mr. Mcmanus states that he spent six hours on "Trial of the Crime Victims Compensation matter." The Commissioner who was obviously present during the entire hearing recalls the hearing taking slightly less than three hours. The court reporter who was present during the entire hearing submitted a bill for three hours of court reporting.

Mr. McManus states that the total hours he worked on this case was 20. Yet, if all the hours he claims to have worked are added up the total comes to 19½ hours. It is

difficult for the Court to seriously examine the hours listed in this petition as it is clear that the Court and Mr. McManus use different methods to measure time.

The Court finds that a reasonable fee for a hearing which lasted no more than three hours and the preparation involved is $1,000.

It is hereby ordered that the September 28, 1998, order of this Court denying Claimant's application for benefits under the Crime Victims Compensation Act is reversed and this matter is remanded to the office of the Attorney General for preparation of an amended investigatory report within 60 days and that the Claimant's attorney is awarded attorney's fees in the amount of $1,000.